## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| CA, INC., D/B/A CA TECHNOLOGIES, §<br>§<br>Plaintiff, §<br>§<br>v. §<br>§<br>APPDYNAMICS, INC., §<br>§<br>Defendant. §<br>§ | Civil Case No. _____<br><br>**JURY TRIAL REQUESTED** |

## COMPLAINT

Plaintiff CA, Inc. d/b/a CA Technologies ("CA"), through its attorneys, for its complaint against Defendant AppDynamics, Inc. ("AppDynamics") for infringement of U.S. Patent Nos. 7,225,361 B2 ("the '361 patent"), 7,512,935 B1 ("the '935 patent"), and 7,797,580 B2 ("the '580 patent") (collectively "the Patents-In-Suit"), alleges as follows:

## PARTIES

1.      CA, Inc. is a Delaware corporation with its headquarters located at One CA Plaza, Islandia, New York 11749.

2.      Upon information and belief, Defendant AppDynamics, Inc. is a corporation organized under the laws of Delaware, and maintains its principal place of business at 303 Second Street, Suite 450, North Tower, San Francisco, CA 94107.

## JURISDICTION AND VENUE

3.      This is a civil action for patent infringement, injunctive relief, and damages arising under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq*.  This Court has exclusive subject matter jurisdiction over this case for patent infringement under 28 U.S.C. §§ 1331 and 1338(a).

4.      Upon information and belief, Defendant has ongoing and systematic contacts within the State of New York and within this district.  Defendant, directly or through intermediaries (including distributors, retailers, and others), ships, distributes, offers for sale, sells, and/or advertises its products in the United States, the State of New York, and the Eastern District of New York.

5.      Defendant has purposefully and voluntarily placed one or more of their infringing products into the stream of commerce with the expectation that they will be purchased by consumers in the Eastern District of New York.  These infringing products have been and continue to be purchased by consumers in the Eastern District of New York.

6.      Defendant has committed the tort of patent infringement within the State of New York, and, more particularly, within the Eastern District of New York.  Therefore, this Court has personal jurisdiction over Defendant.

7.      Venue is proper in the Eastern District of New York under 28 U.S.C. §§ 1391 and 1400(b).

**U.S. PATENT NO. 7,225,361 B2**

8.      On May 29, 2007, the United States Patent and Trademark Office duly and legally issued the '361 patent, titled "Detecting a Stalled Routine," to Jeffrey R. Cobb and Lewis K. Cirne.  A true and correct copy of the '361 patent is attached as Exhibit 1.

9.      Wily Technology, Inc. was the owner by assignment of the '361 patent until the company was acquired by CA in 2006.  Wily Technology, Inc. assigned the '361 patent to Computer Associates Think, Inc., which subsequently assigned the '361 patent to CA. CA is the sole owner and assignee of all right, title, and interest in and to the '361 patent and possesses all rights of recovery under the '361 patent, including the right to recover damages for past infringements.

-2-

10.     The '361 patent is valid and enforceable.

**U.S. PATENT NO. 7,512,935 B1**

11.     On March 31, 2009, the United States Patent and Trademark Office duly and legally issued the '935 patent, titled "Adding Functionality to Existing Code at Exits," to Jeffrey R. Cobb.  A true and correct copy of the '935 patent is attached as Exhibit 2.

12.     Computer Associates Think, Inc. was the owner by assignment of the '935 patent, and subsequently assigned the '935 patent to CA.  CA is the sole owner and assignee of all right, title, and interest in and to the '935 patent and possesses all rights of recovery under the '935 patent, including the right to recover damages for past infringements.

13.     The '935 patent is valid and enforceable.

**U.S. PATENT NO. 7,797,580 B2**

14.     On September 14, 2010, the United States Patent and Trademark Office duly and legally issued the '580 patent, titled "Determining that a Routine has Stalled," to Jeffrey R. Cobb and Lewis K. Cirne.  A true and correct copy of the '580 patent is attached as Exhibit 3.

15.     Computer Associates Think, Inc. was the owner by assignment of the '935 patent, and subsequently assigned the '935 patent to CA.  CA  is the sole owner and assignee of all right, title, and interest in and to the '580 patent and possesses all rights of recovery under the '580 patent, including the right to recover damages for past infringements.

16.     The '580 patent is valid and enforceable.

**GENERAL ALLEGATIONS**

17.     Upon information and belief, Defendant makes, uses, sells, and offers to sell within the United States, and/or imports into the United States one or more products, including but not limited to its AppDynamics Pro and AppDynamics Lite application performance monitoring (APM) software that practices each of the elements of one or more claims of the

-3-

Patents-In-Suit, without license from CA, in the Eastern District of New York and throughout the United States.

18.     Defendant's continuing acts of infringement are irreparably harming and causing damage to CA.  CA has no adequate remedy at law to redress Defendant's continuing acts of infringement.  The hardships that would be imposed upon Defendant by an injunction are less than those faced by CA should an injunction not issue.  Furthermore, the public interest would be served by issuance of an injunction.

19.     Upon information and belief, Defendant has actual knowledge of the Patents-In-Suit and has not ceased its infringing activities in light of such knowledge.  According to Defendant's web site, Defendant's founder and CEO, Jyoti Bansal, "led the design and architecture for several products at Wily Technology," where Mr. Bansal was a Senior Software Engineer. Wily was the original assignee of the '361 patent, which was later acquired by CA. Furthermore, the '935 and '580 patents are directly related to Mr. Bansal's product design and development activities while he was a Senior Software Engineer at Wily Technology.  Defendant infringes CA's Patents-in-Suit by continuing to employ the claimed techniques without license.

## COUNT ONE – INFRINGEMENT OF U.S. PATENT NO. 7,225,361 B2

20.     This count incorporates by reference Paragraphs 1 through 19 as if fully set forth herein.

21.     Upon information and belief, Defendant makes, uses, sells, and offers to sell within the United States, and/or imports into the United States one or more products, including but not limited to those identified in Paragraph 17 that practice each of the elements of one or more claims of the '361 patent, without license from CA, in the Eastern District of New York and throughout the United States.

-4-

22.     By making, using, selling, and offering to sell within the United States, and/or importing into the United States its products, Defendant has directly infringed, and will continue to directly infringe, one or more claims of the '361 patent under 35 U.S.C. § 271 (a), literally and/or under the doctrine of equivalents.

23.     Defendant has had actual knowledge of the '361 patent, yet continues to infringe the '361 patent.

24.     Defendant knew that certain software it sells, offers to sell within the United States, and/or imports into the United States, including but not limited to those identified in Paragraph 17, was especially made or especially adapted for infringing one or more claims of the '361 patent.

25.     Defendant knew that certain software it sells within the United States, offers to sell within the United States and/or imports into the United States, including but not limited to those identified in Paragraph 17, was not a staple article or commodity of commerce suitable for substantial noninfringing use.

26.     Defendant's customers, as a result of Defendant selling within the United States, offering to sell within the United States, and/or importing into the United States, certain software, including but not limited to those identified in Paragraph 17, acquire and use such software in a manner that directly infringes the '361 patent.

27.     Despite having knowledge that consumer use of certain software it sells within the United States, offers to sell within the United States, and/or imports into the United States, including but not limited to those identified in Paragraph 17, infringes one or more claims of the '361 patent, Defendant specifically intended for consumers to acquire and use such software in a manner that infringes one or more claims of the '361 patent, and Defendant knew or should have known that its actions were inducing infringement.

28.     Due to Defendant's knowledge and actions described in Paragraphs 23-26 above, Defendant has contributorily infringed, and will continue to contributorily infringe, one or more claims of the '361 patent under 35 U.S.C. § 271 (c), literally and/or under the doctrine of equivalents.

29.     Due to Defendant's knowledge and actions described in Paragraphs 23 and 26-27, Defendant has actively induced infringement of, and will continue to actively induce infringement of, one or more claims of the '361 patent under 35 U.S.C. § 271 (b), literally and/or under the doctrine of equivalents.

30.     As a direct and proximate consequence of the acts and practices of Defendant, CA has been, is being and, unless such acts and practices are enjoined by the Court, will continue to be injured in its business and property rights, and has suffered, is suffering, and will continue to suffer injury and damages for which it is entitled to relief under 35 U.S.C. § 284.

31.     As a direct and proximate consequence of the acts and practices of Defendant, Defendant has also caused, is causing and, unless such acts and practices are enjoined by the Court, will continue to cause irreparable harm to CA for which there is no adequate remedy at law, and for which CA is entitled to injunctive relief under 35 U.S.C. § 283.

32.     Upon information and belief, Defendant's infringement of the '361 patent has been and continues to be willful and deliberate.

**COUNT TWO – INFRINGEMENT OF U.S. PATENT NO. 7,512,935 B1**

33.     This count incorporates by reference Paragraphs 1 through 32 as if fully set forth herein.

34.     Upon information and belief, Defendant makes, uses, sells, and offers to sell within the United States, and/or imports into the United States one or more products, including but not limited to those identified in Paragraph 17, that practice each of the elements of one or

more claims of the '935 patent, without license from CA, in the Eastern District of New York and throughout the United States.

35.     By making, using, selling, and offering to sell within the United States, and/or importing into the United States its products, Defendant has directly infringed, and will continue to directly infringe, one or more claims of the '935 patent under 35 U.S.C. § 271 (a), literally and/or under the doctrine of equivalents.

36.     Defendant has had actual knowledge of the '935 patent, yet continues to infringe the '935 patent.

37.     Defendant knew that certain software it sells within the United States, offers to sell within the United States, and/or imports into the United States, including but not limited to those identified in Paragraph 17, was especially made or especially adapted for infringing one or more claims of the '935 patent.

38.     Defendant knew that certain software it sells within the United States, offers to sell within the United States, and/or imports into the United States, including but not limited to those identified in Paragraph 17, was not a staple article or commodity of commerce suitable for substantial noninfringing use.

39.     Defendant's customers, as a result of Defendant selling within the United States, offering to sell within the United States, and/or importing into the United States, certain software, including but not limited to those identified in Paragraph 17, acquire and use such software in a manner that directly infringes the '935 patent.

40.     Despite having knowledge that consumer use of certain software it sells within the United States, offers to sell within the United States, and/or imports into the United States, including but not limited to those identified in Paragraph 17, infringes one or more claims of the '935 patent, Defendant specifically intended for consumers to acquire and use such software in a

manner that infringes one or more claims of the '935 patent, and Defendant knew or should have known that its actions were inducing infringement.

41.     Due to Defendant's knowledge and actions described in Paragraphs 36-39 above, Defendant has contributorily infringed, and will continue to contributorily infringe, one or more claims of the '935 patent under 35 U.S.C. § 271 (c), literally and/or under the doctrine of equivalents.

42.     Due to Defendant's knowledge and actions described in Paragraphs 36 and 39-40, Defendant has actively induced infringement of, and will continue to actively induce infringement of, one or more claims of the '935 patent under 35 U.S.C. § 271 (b), literally and/or under the doctrine of equivalents.

43.     As a direct and proximate consequence of the acts and practices of Defendant, CA has been, is being and, unless such acts and practices are enjoined by the Court, will continue to be injured in its business and property rights, and has suffered, is suffering, and will continue to suffer injury and damages for which it is entitled to relief under 35 U.S.C. § 284.

44.     As a direct and proximate consequence of the acts and practices of Defendant, Defendant has also caused, is causing and, unless such acts and practices are enjoined by the Court, will continue to cause irreparable harm to CA for which there is no adequate remedy at law, and for which CA is entitled to injunctive relief under 35 U.S.C. § 283.

45.     Upon information and belief, Defendant's infringement of the '935 patent has been and continues to be willful and deliberate.

### COUNT THREE – INFRINGEMENT OF U.S. PATENT NO. 7,797,580 B2

46.     This count incorporates by reference Paragraphs 1 through 45 as if fully set forth herein.

47.    Upon information and belief, Defendant makes, uses, sells, and offers to sell within the United States, and/or imports into the United States one or more products, including but not limited to those identified in Paragraph 17, that practice each of the elements of one or more claims of the '580 patent, without license from CA, in the Eastern District of New York and throughout the United States.

48.    By making, using, selling, and offering to sell within the United States, and/or importing into the United States its products, Defendant has directly infringed, and will continue to directly infringe, one or more claims of the '580 patent under 35 U.S.C. § 271 (a), literally and/or under the doctrine of equivalents.

49.    Defendant has had actual knowledge of the '580 patent, yet continues to infringe the '580 patent.

50.    Defendant knew that certain software it sells within the United States, offers to sell within the United States, and/or imports into the United States including but not limited to those identified in Paragraph 17, was especially made or especially adapted for infringing one or more claims of the '580 patent.

51.    Defendant knew that certain software it sells within the United States, offers to sell within the United States, and/or imports into the United States, including but not limited to those identified in Paragraph 17, was not a staple article or commodity of commerce suitable for substantial noninfringing use.

52.    Defendant's customers, as a result of Defendant selling within the United States, offering to sell within the United States, and/or importing into the United States, certain software, including but not limited to those identified in Paragraph 17, acquire and use such software in a manner that directly infringes the '580 patent.

53.     Despite having knowledge that consumer use of certain software it sells within the United States, offers to sell within the United States, and/or imports into the United States, including but not limited to those identified in Paragraph 17, infringes one or more claims of the '580 patent, Defendant specifically intended for consumers to acquire and use such software in a manner that infringes one or more claims of the '580 patent, and Defendant knew or should have known that its actions were inducing infringement.

54.     Due to Defendant's knowledge and actions described in Paragraphs 49-52 above, Defendant has contributorily infringed, and will continue to contributorily infringe, one or more claims of the '580 patent under 35 U.S.C. § 271 (c), literally and/or under the doctrine of equivalents.

55.     Due to Defendant's knowledge and actions described in Paragraphs 49 and 52-53, Defendant has actively induced infringement of, and will continue to actively induce infringement of, one or more claims of the '580 patent under 35 U.S.C. § 271 (b), literally and/or under the doctrine of equivalents.

56.     As a direct and proximate consequence of the acts and practices of Defendant, CA has been, is being and, unless such acts and practices are enjoined by the Court, will continue to be injured in its business and property rights, and has suffered, is suffering, and will continue to suffer injury and damages for which it is entitled to relief under 35 U.S.C. § 284.

57.     As a direct and proximate consequence of the acts and practices of Defendant, Defendant has also caused, is causing and, unless such acts and practices are enjoined by the Court, will continue to cause irreparable harm to CA for which there is no adequate remedy at law, and for which CA is entitled to injunctive relief under 35 U.S.C. § 283.

58.     Upon information and belief, Defendant's infringement of the '580 patent has been and continues to be willful and deliberate.

-10-

## REQUEST FOR A JURY TRIAL

59.    CA requests a jury trial of all issues in this action so triable.

## PRAYER FOR RELIEF

WHEREFORE, CA prays for judgment against Defendant as follows and for the following relief:

A.    a judgment that each and every Patent-In-Suit was duly and legally issued, is valid, and is enforceable;

B.    a permanent injunction restraining Defendant and its officers, employees, agents, parents, subsidiaries, affiliates, and anyone else in active concert or participation with them, from taking any actions that would directly or indirectly infringe any of the claims of each and every Patent-In-Suit;

C.    a judgment that Defendant has directly infringed, contributorily infringed, and/or induced infringement of one or more claims of each of the Patents-In-Suit;

D.    a judgment that Defendant has willfully infringed one or more claims of each of the Patents-In-Suit;

E.    actual damages through verdict and post-verdict until Defendant is enjoined from further infringing activities;

F.    an accounting of damages through verdict and post-verdict until Defendant is enjoined from further infringing activities;

G.    all pre-judgment and post-judgment interest allowed by law, including an award of prejudgment interest, pursuant to 35 U.S.C. § 284, from the date of each act of infringement of any claims of the Patents-in-Suit to the day a damages judgment is entered, and further award of post-judgment interest, pursuant to 28 U.S.C. § 1961, continuing until such judgment is paid, at the maximum rate allowed by law;

-11-

H.      a judgment and order finding this to be an exceptional case and requiring

Defendant to pay the costs of this action (including all disbursements) and attorneys' fees as

provided by 35 U.S.C. § 285;

I.      reasonable attorneys' fees and costs;

J.      an award of increased damages pursuant to 35 U.S.C. § 284 for Defendant's

willful and deliberate patent infringement; and

K.      such other and further relief as the Court deems just and equitable.

Dated:  New York, New York
        April 10, 2013                                    Respectfully submitted,

                                                        */s/ David J. Ball*
                                                        David J. Ball
                                                        BRACEWELL & GIULIANI LLP
                                                        1251 Avenue of the Americas
                                                        New York, New York 10020
                                                        Telephone: (212) 508-6100
                                                        Facsimile:  (212) 508-6101
                                                        Email: david.ball@bgllp.com

                                                        Of Counsel:
                                                        Alan D. Albright
                                                        Barry K. Shelton
                                                        Matthew K. Gates
                                                        BRACEWELL & GIULIANI LLP
                                                        111 Congress Avenue, Suite 2300
                                                        Austin, Texas 78701
                                                        Telephone: (512) 472-7800
                                                        Facsimile:  (512) 472-9123
                                                        Email:  alan.albright@bgllp.com
                                                         Email:  barry.shelton@bgllp.com
                                                        Email:  matt.gates@bgllp.com

Exhibit 1

Case 2:13-cv-02111-DRH-GRB Document 1 Filed 04/10/13 Page 14 of 20 PageID #: 14

US007225361B2

(12) **United States Patent** (10) **Patent No.:** **US 7,225,361 B2**
Cobb et al. (45) **Date of Patent:** **May 29, 2007**

(54) **DETECTING A STALLED ROUTINE**

(75) Inventors: **Jeffrey R. Cobb**, San Carlos, CA (US); **Lewis K. Cirne**, San Francisco, CA (US)

(73) Assignee: **Wily Technology, Inc.**, Brisbane, CA (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 550 days.

(21) Appl. No.: **10/079,966**

(22) Filed: **Feb. 21, 2002**

(65) **Prior Publication Data**

US 2002/0170036 A1 Nov. 14, 2002

**Related U.S. Application Data**

(60) Provisional application No. 60/272,147, filed on Feb. 28, 2001.

(51) **Int. Cl.**
*G06F 11/00* (2006.01)

(52) **U.S. Cl.** .......................................... **714/38**; 714/35

(58) **Field of Classification Search** ................. 714/35, 714/38, 51, 55
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 5,193,180 A | | 3/1993 | Hastings |
| 5,379,414 A | * | 1/1995 | Adams ........................ 714/55 |
| 5,396,613 A | * | 3/1995 | Hollaar ........................ 714/4 |
| 5,432,933 A | * | 7/1995 | Janicek ...................... 718/100 |
| 5,526,485 A | | 6/1996 | Brodsky |
| 5,655,081 A | | 8/1997 | Bonnell et al. |

| | | | |
|---|---|---|---|
| 5,732,272 A | * | 3/1998 | Gochee ...................... 717/128 |
| 5,748,882 A | | 5/1998 | Huang |
| 5,898,873 A | | 4/1999 | Lehr |
| 5,911,060 A | | 6/1999 | Elliott |
| 5,978,594 A | | 11/1999 | Bonnell et al. |
| 6,009,258 A | * | 12/1999 | Elliott ........................ 703/22 |
| 6,021,272 A | | 2/2000 | Cahill |
| 6,076,157 A | * | 6/2000 | Borkenhagen et al. ...... 712/228 |
| 6,260,187 B1 | | 7/2001 | Cirne |
| 6,308,287 B1 | | 10/2001 | Mitchell et al. |
| 6,332,212 B1 | | 12/2001 | Organ et al. |
| 6,374,282 B1 | | 4/2002 | Bunton et al. |

(Continued)

OTHER PUBLICATIONS

Keller, Ralph and Holze, Urs, Binary Component Adaptation, University of California, Technical Report, Dec. 3, 1997.

(Continued)

*Primary Examiner*—Bryce P. Bonzo
(74) *Attorney, Agent, or Firm*—Vierra Magen Marcus & DeNiro, LLP

(57) **ABSTRACT**

A system is disclosed that can determine whether a routine is stalled. The system does not require the developer of the routine to add code for the purpose of detecting whether the routine is stalled. Furthermore, the system can be used to monitor various routines at different levels of granularity, such as at the thread level, method level, or other levels. One embodiment of the present invention allows a user to specify a method and an expected time frame. Code for that method is modified to add additional code that implements a timing mechanism. The timing mechanism is used to detect when a thread enters that method and does not return within an approximation of the expected time frame. Other embodiments are also within the scope of the present invention.

**39 Claims, 5 Drawing Sheets**



**US 7,225,361 B2**

Page 2

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 6,449,739 | B1 | 9/2002 | Landan |
| 6,543,022 | B1 * | 4/2003 | O'Connor ................... 714/752 |
| 6,567,839 | B1 * | 5/2003 | Borkenhagen et al. ...... 718/103 |
| 6,630,946 | B2 * | 10/2003 | Elliott et al. ................ 345/781 |
| 6,745,321 | B1 * | 6/2004 | Floyd et al. ................. 712/227 |
| 6,795,916 | B2 * | 9/2004 | Tung ............................ 713/2 |
| 2002/0038416 | A1 * | 3/2002 | Fotland et al. ............. 712/228 |
| 2002/0103663 | A1 | 8/2002 | Bankier et al. |
| 2002/0162053 | A1 * | 10/2002 | Os .............................. 714/38 |
| 2002/0170036 | A1 * | 11/2002 | Cobb et al. ................. 717/130 |

### OTHER PUBLICATIONS

Lee, Han Bok and Zorn, Benjamin G., BIT: A Tool for Instrumenting Java Bytecodes, USITS 97, Dec. 1997.
Cohen, Geoff A., Chase, Jeffrey S., Kaminsky, David L., Automatic Program Transformation with JOIE, USENIX Annual Technical Symposium, Jun. 1998.
Larus, James R., and Schnarr, Eric, EEL: Machine-Independent Executable Editing, SIGPLAN Conference on Programming Language Design and Implementation, Jun. 1995.

* cited by examiner

**U.S. Patent**          **May 29, 2007**          **Sheet 1 of 5**          **US 7,225,361 B2**

# Figure 1



original code ⟶

rules ⟶     code modifier
            10          ⟶ enhanced
                            code

additional code ⟶



Fig. 2

receive original code — 96

receive additional code — 98

receive methods and time — 100

access next method — 102

insert call to start code — 104

insert call to stop code — 106

more methods? — 108

no

yes

add start code, stop code, and timer code — 110



Fig. 3



Fig. 4



Fig. 5

Fig. 6



Fig. 7

U.S. Patent          May 29, 2007          Sheet 5 of 5          US 7,225,361 B2



Fig. 8



Fig. 9