UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
CA, INC., D/B/A CA TECHNOLOGIES,

               Plaintiff,

   -against-

APPDYNAMICS, INC.,

               Defendant.

-----------------------------------------------------------------X

MEMORANDUM AND ORDER

13-CV-2111
(Kuntz, J.)

**WILLIAM F. KUNTZ, II, United States District Judge**

Plaintiff CA, Inc. filed this patent infringement action against Defendant AppDynamics on April 10, 2013. Plaintiff now comes forth alleging that during discovery, it learned that two of Defendant's officers had conceived of AppDynamics' competing product while they were still employed by CA, Inc. Accordingly, Plaintiff requests leave to file an amended complaint containing a series of new claims, including federal copyright claims against two of AppDynamics' officers and state law claims for breach of fiduciary duty; breach of loyalty; misappropriation of trade secrets; interference with prospective economic advantage; interference with existing contracts; unfair competition and unfair business practices; unjust enrichment; conversion; constructive trust; and replevin. However, Plaintiff has failed to meet the standards of Fed. R. Civ. P. 15 and 16. The motion is therefore denied.

## FACTUAL BACKGROUND

The initial complaint in this action set forth three claims of patent infringement against Defendant. Dkt. 1 ("Complaint") (alleging infringement of U.S. Patent Nos. 7,225,361 B2 ("the '361 patent"), 7,512,935 B1 ("the '935 patent"), and 7,797,580 B2 ("the '580 patent")). Plaintiff alleged that Defendant "makes, uses, sells, and offers to sell ... its AppDynamics Pro and AppDynamics Lite application performance monitoring (APM) software that practices each of the elements of one or more claims of the Patents-In-Suit, without license from CA." *Id.* at 3-4. Plaintiff also claimed that AppDynamics' founder and CEO, Jyoti Bansal, led the design and

1

architecture for several products at Wily Technology, a company that was the original assignee of one of the patents, and that was later acquired by CA. *Id.* at 2, 4. Plaintiff argued that the other two patents-in-suit are "directly related to Mr. Bansal's product design and development activities while he was a Senior Software Engineer at Wily Technology." *Id.* at 4.

On March 27, 2014, CA requested a pre-motion conference regarding a proposed motion to amend, and on June 2, 2014, CA filed the immediate motion. Dkts. 49-50. In its motion, CA explains that AppDynamics officers Jyoti Bansal and Bashkar Sunkara (AppDynamics' co-founder and Vice President of Engineering) had previously worked as software developers for Wily Technologies. Dkt. 50 ("Mot.") at 3. During their employment, Bansal and Sunkara allegedly signed valid and enforceable Proprietary Rights and Invention Agreements. *Id.* These agreements allegedly prohibited them from using or disclosing any proprietary or confidential information during their employment with CA, and for five years thereafter. *Id.* Moreover, CA claims, the agreements provided that "any work done by Bansal and Sunkara during their employment with CA belong[ed] exclusively to CA, and that Bansal and Sunkara had an affirmative obligation to disclose and assign all works to CA." *Id.*

CA alleges that on February 27, 2014, it discovered facts indicating that AppDynamics, Bansal, and Sunkara had "engaged in secretive, systematic and intentional theft of CA's trade secrets and proprietary information." *Id.* at 1, 3. On that day, CA inspected AppDynamics' source code and discovered that Bansal and Sunkara had "conceived of and secretly began developing their competing APM [Application Performance Management] product similar to CA's flagship product before leaving CA." *Id* at 3. Bansal and Sunkara had allegedly written "extensive" source code as early as December 2007, which was months before they left CA to found AppDynamics. *Id.* at 3-4.

2

Based on this new information, CA seeks to amend its complaint to add twelve new claims and two new individual defendants. *Id.* at 5. CA requests leave to add a declaratory relief claim of ownership and authorship, and to assert state law claims for participating in, inducing, and aiding and abetting a breach of fiduciary duty and breach of loyalty; misappropriation of trade secrets; interference with prospective economic advantage; interference with existing contracts; unfair competition and unfair business practices; unjust enrichment; conversion; constructive trust; and replevin. *See* Dkt. 50-1 ("Proposed Am. Compl."). CA also seeks to add Bansal and Sunkara as individual defendants, and to add claims against them for: induced and contributory infringement; breach of fiduciary duty; breach of the duty of loyalty; breach of contract; misappropriation of trade secrets; interference with prospective economic advantage; interference with contract; unfair competition; unfair business practices; and in the alternative breach of the implied covenant of good faith and fair dealing, unjust enrichment, conversion, constructive trust, and replevin. *Id.*

AppDynamics filed a complaint in California state court regarding the same claims and requesting declaratory relief on March 28, 2014. Mot. at 4 n.2; *but see* Dkt. 51 ("Opp.") at 5 n.2 (stating that the filing date was March 27, 2014). CA removed the declaratory action to the Northern District of California, and subsequently moved to dismiss or stay the case pending CA's Motion to Amend. Mot. at 4; Dkt. 50-11. AppDynamics then filed a motion to remand based on lack of diversity. Opp. at Ex. 4. The Northern District of California subsequently set a hearing for AppDynamics' remand motion and stayed CA's motion to dismiss. *Id.* at Ex. 6.

3

## DISCUSSION

### I. Legal Standard

When a motion for leave to amend is made after a scheduling order's amendment deadline has passed, a court balances Rule 15(a)'s more liberal standard against Rule 16(b)'s stricter requirement that a court's scheduling order "shall not be modified except upon a showing of good cause." *See Grochowski v. Phoenix Const.*, 318 F.3d 80, 86 (2d Cir. 2003). A finding of good cause depends on "the diligence of the moving party." *Id.*; *see also Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000) ("[D]espite the lenient standard of Rule 15(a), a district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause."). This condition requires a party to show that "despite its having exercised diligence, the applicable deadline could not have been reasonably met." *Perfect Pearl Co., Inc. v. Majestic Pearl & Stone, Inc.*, 889 F. Supp. 2d 453, 457 (S.D.N.Y. 2012) (Engelmayer, J.). "A party fails to show good cause when the proposed amendment rests on information that the party knew, or should have known, in advance of the deadline." *Id.* (citations omitted). In addition to the good cause requirement, a court operating under Rule 16's bounds may also consider "other relevant factors including . . . whether allowing the amendment of the pleading at this stage of litigation will prejudice [the non-moving party]." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007).

Alongside Rule 16(b)'s hurdles, a district court will consider Rule 15(a)'s more flexible requirements. Rule 15(a) permits a court to "freely" grant leave to amend when "justice so requires." However, a court retains "sound discretion" over the decision to grant or deny leave to amend, and may deny leave for "good reason, including futility, bad faith, undue delay, or

4

undue prejudice to the opposing party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).

## II. Amendment is Not Justified Under Rule 16

### A. CA Does Not Demonstrate Good Cause for Amendment of the Patent Claims

CA argues that it inspected AppDynamics' source code on February 27, 2014, and within one month, filed its request for a pre-motion conference on its motion to amend. Dkt. 36; Mot. at 7. Citing cases in which a two-month delay between discovery of the basis for the amendment and filing of the request was considered acceptable, CA argues that it "diligently pursued leave to amend from the moment it became aware of the facts giving rise to this motion." Mot. at 7 (citing *Bryant v. Carlisle Carrier Corp.*, 13-CV-578, 2014 WL 712592 (E.D.N.Y. Feb. 25, 2014) (Gleeson, J.); *Hernandez v. Immortal Rise, Inc.*, 11-CV-4360, 2013 WL 1703529 (E.D.N.Y. Apr. 19, 2013), *report and recommendation adopted in part*, 11-CV-4360, 2014 WL 991715 (E.D.N.Y. Mar. 13, 2014) (Mauskopf, J.)).[1]

The Court does not disagree that one month may constitute "diligence" under Rule 16. Nonetheless, a new discovery does not give a party *carte blanche* to amend its pleadings. Instead, the newly found facts should give rise to the specific proposed claims the party seeks to add. *See Cohen v. Greenberg*, 09-CV-3012, 2010 WL 4159628, at *3 (S.D.N.Y. Oct. 13, 2010) (Castel, J.) (denying leave to amend because party failed to explain how "newly discovered documents support the proposed amendments"); *Lamothe v. Town of Oyster Bay*, 08-CV-2078, 2011 WL 4974804, at *8 (E.D.N.Y. Oct. 19, 2011) (Spatt, J.) ("[E]ven if the Plaintiffs have learned new facts through the discovery process, this does not automatically entitle the Plaintiffs

---

[1] Plaintiff cited Magistrate Judge Bloom's Report and Recommendation, rather than the district court opinion. The district court stated it would have "adopt[ed] ... in its entirety" the R&R were it not for a subsequent-filed bankruptcy petition. *Hernandez*, 2014 WL 991715, at *3.

5

to amend."). From a review of the proposed amended complaint, the Court is satisfied that the declaratory relief claim and state law claims are supported by good cause, because they are founded on the source code discovery.

However, CA fails to demonstrate that the source code discovery justifies its delay in adding the two individual defendants in the patent infringement claims. CA's contributory and induced infringement claims are founded on Bansal and Sunkara's positions as officers; their involvement in the day-to-day "infringing operations"; their facilitation of AppDynamics' sale of infringing products; and their decision to continue selling the infringing products. Mot. at ¶ 12; Proposed Am. Compl. at ¶¶ 14-17. CA makes no attempt to argue that these facts were newly discovered, nor does it explain why these allegations could not have been brought forth earlier. Notably, CA's Proposed Amended Complaint does not cite the new source code discovery as a basis for its contributory and induced infringement claims. Instead, it cites back to its standard allegations of patent infringement. *See* Proposed Am. Compl. at ¶¶ 171-73 ("Due to Defendants' knowledge and actions described in Paragraphs 166-169 Defendants have contributorily infringed, and will continue to contributorily infringe."); 183-85; 196-98. Therefore, the Court finds that the source code discovery does not provide good cause for amending the patent infringement claims at this stage of litigation. CA will not be permitted to amend its Complaint to do so. *See Parker,* 204 F.3d at 341 (denying leave to amend because plaintiff had known about facts supporting proposed amendment throughout the course of litigation).

### B. AppDynamics Would Be Prejudiced by Amendment

In assessing Rule 16, the Court may consider other factors such as prejudice. *See Kassner,* 496 F.3d at 244 ("[I]n the exercise of its discretion under Rule 16(b), [a court] also may consider other relevant factors including, in particular, whether allowing the amendment of the

pleading at this stage of the litigation will prejudice defendants."); *Point 4 Data Corp. v. Tri-State Surgical Supply & Equip., Ltd.*, 11-CV-726, 2012 WL 2458060, at *8 (E.D.N.Y. June 27, 2012) (Mann, M.J.) ("[I]n assessing "good cause" under Rule 16, the Court may consider other factors such as prejudice."), *memorandum and order adopted* 11-CV-726, 2012 WL 3306612 (E.D.N.Y. Aug. 13, 2012) (Amon, C.J.).

The Court notes that fact discovery is close to ending, and the claim construction hearing on the underlying patent claims has already been held. More significantly, however, CA's request to amend would change the entire nature and scope of this action. CA seeks to add twelve new claims (including one federal copyright claim and eleven state claims) and modify the existing three claims to add individual defendants. *See* Proposed Am. Compl. It is unquestionable that discovery on these numerous new claims will go far beyond the bounds of the current patent infringement action. Further, the additional discovery would predominantly take place in California, which is where the employment agreements were signed and where Bansal and Sunkara allegedly created the disputed source code. *See* Proposed Am. Compl. at ¶¶ 7-8, Dkt. 50, Exs. 1-2. The result of permitting amendment would likely be a substantial delay in the resolution of the pending patent infringement action, along with an enormous amount of new discovery on the numerous new factual allegations set forth in the Proposed Amended Complaint. These issues compel a denial of leave to amend. *See Lamothe v. Town of Oyster Bay*, 08-CV-2078, 2011 WL 4974804, at *14 (E.D.N.Y. Oct. 19, 2011) (Spatt, J.) (analyzing prejudice under Rule 15 and noting that "[i]t may still be appropriate to deny leave to amend when a case has progressed to such an advanced stage that discovery is nearly complete and the proposed amendments would require additional extensive discovery.").

Though the prejudice indicated above is sufficient to deny amendment, the Court is further persuaded by the fact that there is little countervailing prejudice to CA. There is an action on the claims of the proposed amended complaint currently pending in California, and CA has not indicated that it cannot litigate its new claims there. Indeed, given that the facts underlying the new allegations appear to predominantly occur in California, and it appears that California was selected as the chosen forum in the employment contracts that CA claims were breached, California provides an adequate and perhaps even preferable forum for resolution of the proposed claims. *See* Dkt. 36 at 2.

Based on the considerations discussed above, the Court will not permit CA to amend its complaint to add either the amended patent claims or the twelve new non-patent claims.

### III.   Under Rule 15, the State Law Claims Would Be Futile Because the Court Would Decline to Exercise Supplemental Jurisdiction Over Them

28 U.S.C. § 1367 provides that a district court may decline to exercise supplemental jurisdiction over a claim if "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction." Such is the case here.

The parties hotly dispute whether the patent claims and the non-patent claims arise from the same nucleus of operative fact, so as to give rise to supplemental jurisdiction over the non-patent claims. Mot. at 9-10; Opp. at 16-19.[2] CA argues "[it] learned that Bansal and Sunkara conceived of and secretly began developing that competing and infringing product while still employed by CA." Reply at 5. AppDynamics vigorously contests this argument and points out that "nowhere in the Amended Complaint does CA allege that the patent infringement claims stem from the 2007-2008 code writing that is at the root of the copyright and other non-patent

---

[2] This same dispute appears in the parties' argument over whether pendant personal jurisdiction is met. Opp. at 13-14; Dkt. 52 ("Reply") at 4-5.

claims." Dkt. 57 ("Surreply") at 6.[3] According to AppDynamics, "there is a fundamental disconnect between the old code authored by Bansal and Sunkara in 2007-2008 . . . and the specific software that is actually accused of patent infringement in this case." *Id.* at 7; *see also id.* at 4 n.1.

Because the Court would decline to exercise jurisdiction over the state law claims even if a common nucleus of fact were found, the Court need not wade into the contested factual issue of whether the source code for the infringing products was created while Bansal and Sunkara were employees of CA. In its Proposed Amended Complaint, CA seeks to add eleven new state law claims, including breach of fiduciary duty and loyalty, trade secret misappropriation, interference with prospective economic advantage, interference with existing contracts; unfair competition and unfair business practices; unjust enrichment; conversion; constructive trust; and replevin. *See* Proposed Am. Comp. These allegations markedly diverge from the existing patent claims and seek a broader range of remedies. *Compare* Dkt. 1 at 11-12 *with* Proposed Am. Compl. at 44-46. The proposed Amended Complaint asserts factual predicates such as: "Defendants have engaged in wrongful conduct designed to interfere with or disrupt CA's relationships with their actual and prospective customers, including by, among other things, using and/or disclosing CA's trade secrets and proprietary information . . . using and disclosing confidential and proprietary CA technical, sales, marketing, and customer information wrongfully acquired from CA; and denigrating the nature, performance, quality, and capabilities of CA's technology, products, and services" and "Bansal and Sunkara breached their obligations under the

---

[3] Notwithstanding AppDynamics' arguments, the Proposed Amended Complaint does allege that: "Bansal and Sunkara began developing the products accused of infringement by CA prior to leaving CA.... In particular, Bansal began developing software for the products accused of infringing CA's patents in December 2007, approximately three months before leaving CA." Proposed Am. Compl. at ¶¶ 43-44.

Agreements by . . . soliciting and/or inducing CA's employees to leave the employ of CA during and within one year of their respective departures from CA; and/or soliciting the business of CA customers and clients for and on behalf of AppDynamics." *Id.* at ¶¶ 249, 256.

These claims (which are so abundant that CA does not even attempt to justify each one in its moving brief) go far beyond even a "willfulness" determination and would doubtlessly predominate over the three patent infringement claims. *See* Reply at 7. Currently, this action encompasses a straightforward patent infringement dispute. With the added claims, the action will expand to include allegations of impropriety that may be barely related, if at all, to the patent infringement claims. It will require testimony from additional witnesses and different sources of proof, and at trial, the new allegations would likely overshadow the federal patent infringement issues that would that have long been the focus of this case. Given these considerations, the Court finds that the state law claims would clearly predominate over the patent infringement action, and would decline to exercise supplemental jurisdiction over them.

## CONCLUSION

For the reasons herein, the Court DENIES Plaintiff's Motion to Amend the Complaint. The operative complaint in this action shall remain the Complaint of April 10, 2014. The parties shall proceed with the standing discovery deadlines in this action.

SO ORDERED.

WILLIAM F. KUNTZ, II
United States District Judge

Dated: June 19, 2014

Brooklyn, New York