UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
CA, INC., D/B/A CA TECHNOLOGIES,

        Plaintiff,

  -against-

APPDYNAMICS, INC.,

        Defendant.
-----------------------------------------------------------X

<u>DECISION AND ORDER</u>

13-cv-2111 (WFK) (WDW)

**WILLIAM F. KUNTZ, II, United States District Judge**

Plaintiff CA, Inc. brought this patent infringement action against AppDynamics Inc. on April 10, 2013. The patents at issue in this dispute relate to application performance management ("APM") technology, which monitors the performance of applications for irregularities and stalls. Pursuant to the parties' claim construction briefs and the one-day *Markman* hearing held in this action on June 9, 2014, the Court construes the following terms:

1) "Executed upon any exit"
2) "Detecting whether a routine has stalled," "determine if said first routine has stalled," "determine if said first method has stalled," "determining that said particular routine has stalled," "determining whether said particular method has stalled," "reporting said first routine as stalled," "reporting said particular routine as stalled," "determining whether said particular routine has stalled," "reporting said particular routine as being stalled";
3) "Routine";
4) "Within an approximation of an expected time frame"; and
5) The claim preambles.

## I. Background

The Court assumes familiarity with the facts of this action and recounts only a summary of the disputed patents here. *See generally CA, Inc. v. AppDynamics, Inc.*, 13-CV-2111, 2014 WL 2805115, at *1-2 (E.D.N.Y. June 20, 2014) (Kuntz, J.).

1

## A. Patents-in-Suit

The patents at issue in this dispute protect inventions related to software monitoring. According to Plaintiff, the patents allow companies to monitor applications and websites, and to recognize when problems arise—*e.g.*, when an application "crashes" and becomes unresponsive. Dkt. 32 ("Pl.'s Brief") at 1-2. The patents permit an APM tool to diagnose and fix these problems without altering the application's source code. *Id.* at 2. This method, which modifies "object code" to "instrument" an existing application, avoids cost, time, and error. *Id.*

The '361 patent and '580 patents are related. They provide mechanisms of determining whether a programming routine (the definition of which is disputed, see Section III.A, *supra*) has stalled. One such mechanism is a timer that identifies when a routine has failed to complete in a certain timeframe. *Id.* at 2.

The '935 patent ensures that new exit code will be executed regardless of how a routine exits. *Id.* This means that, for example, the timer that monitors the length of a routine would be triggered by any possible exit. *Id.*

## B. Procedural History

The parties filed their opening claim construction briefs on February 20, 2014. *See* Dkts. 31 ("Def.'s Br."), Pl.'s Br. Each party filed a responsive claim construction brief on March 20, 2014, *see* Dkts. 34 ("Def.'s Resp. Br."); 35 (Pl.'s Resp. Br."), and on June 9, 2014, Defendant filed a letter updating the Court on certain minor construction issues, *see* Dkt. 58. A claim construction hearing was held on June 9, 2014, during which both sides presented arguments. *See* Minute Entry of 6/9/2014. Neither side presented expert testimony. *See id.*

On July 29, 2014, Plaintiff filed a letter stating its updated position regarding the claim construction. Plaintiff stated that because it was no longer accusing Defendant of infringing

certain claims of the '980 patent, the Court no longer needed to construe the terms "determining whether said particular method has stalled"; "reporting said particular routine as stalled"; "determining whether said particular routine is stalled"; "reporting said particular routine as being stalled"; and "within an approximation of an expected timeframe." Dkt. 79 at 1-2. Defendant agreed that these terms no longer required construction. Dkt. 80.

Plaintiff's July 29, 2014 letter also stated that it no longer opposed AppDynamic's proposed constructions as to the detecting / determining / reporting "if the first routine has stalled" terms. Dkt. 79 at 2. Plaintiff set out those proposed constructions in a chart for the "claims that [were] still being asserted against AppDynamics." *Id.* Defendant agreed with Plaintiff on the proposed constructions. Dkt. 80 at 2. However, Defendant argued that the same constructions should apply to the claims that were not being asserted against AppDynamics, because AppDynamics still had outstanding declaratory relief claims as to the non-asserted claims. *Id.*

On August 19, 2014, Defendant submitted a letter withdrawing its request that the Court construe the term "executed upon any exit." Dkt. 86. Defendant stated that based on its deposition of Plaintiff's infringement expert, it "no longer believes that further construction of this term is necessary to resolve the disputed issues." *Id.*

## II. Legal Standard

A dispute over patent infringement is divided into two steps. First, the claim must be properly construed to determine its scope and meaning, and second, the claim as properly construed must be compared to the accused device or process. *See Carroll Touch, Inc. v. Electro Mech. Sys., Inc.*, 15 F.3d 1573, 1576 (Fed. Cir. 1993). The first step, termed claim construction, is within the sole purview of the court. *See Markman v. Westview Instruments, Inc.*, 517 U.S.

370, 390-91 (1996). "When the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008).

When "the ordinary meaning of claim language as understood by a person of skill in the art [is] readily apparent," claim construction involves "little more than the application of the widely accepted meaning of commonly understood words." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (*en banc*). However, if the meaning of the claim term is not immediately apparent, a court will look to alternate sources such as "the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." *Id.*

Within these sources, a court will place emphasis on the "intrinsic" evidence, which consists of the claim language, the written description, and the prosecution history. *Phillips*, 415 F.3d at 1314. Among these types of intrinsic evidence, the claim language is considered most important. *Id.* (also noting that a court may look to other claims asserted in the patent because "claim terms are normally used consistently throughout the patent"). The specification is "always highly relevant" and "[u]sually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Id.* However, limitations from the specification should not be read into the claims. *Comark Comm'ns v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed. Cir. 1998).

A court may also rely on extrinsic evidence. This consists of any other relevant material that was not part of the prosecution history, such as expert and inventor testimony, dictionaries, and learned treatises. *Phillips*, 415 F.3d at 1317. In doing so, a court should be aware that it is

4

"less significant than the intrinsic record in determining the legally operative meaning of claim language." *Id.* (citations omitted).

### III. Discussion

#### A. "Routine" (Claims 1, 3-6, 32 of the '361 patent; 1-3, 5, 7, 10-17, and 20-22 of the '580 patent)

Plaintiff argues that "routine" should be defined as "a sequence of operations" because in the '361 and '580 patents, the specification notes that: "For purposes of this patent document, a routine is a generic term that refers to any sequence of operations." Pl.'s Br. at 14; '361 specification, at 3:10-12. Plaintiff states that there is no disclosure that limits the scope of a routine to a sequence of instructions on a computer, and that Defendant's proposed construction "does not give meaning to the term 'routine,' but instead only describes what a routine can do." *Id.*

Defendant cites the titles, claims, and specifications of the patents to support its proposed construction as "a sequence of instructions on a computer that is intended to start, perform a task, and then end once the task is complete." Def.'s Br. at 23-24; Def.'s Resp. Br. at 12-13; *see also* Transcript of 6/9/14 Hearing ("Tr.") at 126 (defense stating that instructions could be replaced by "operations"). Defendant argues that the patents uniformly describe operations on a computer, and that Plaintiff admitted as much in a prior claim construction hearing addressing the same patents. Def.'s Resp. Br. at 13. Defendant further states that there is no reason *not* to define a term by what it does, and, that without an explanation about the operation starting and ending, the word "stalled" would be difficult to understand. *Id.* at 14.

Plaintiff opposes Defendant's argument, stating that Defendant is improperly using the "background" language of what a routine typically does, not what always happens. *See* Tr. at 15.

Plaintiff argues that operations are not the same as instructions, and that routines are not necessarily on computers—for example, they may take place on servers. *See id.* at 16. Further, Plaintiff argues, there is no language of intent in the patents. *See id.* at 16-17.

The Court agrees with Plaintiff that it is improper to limit the word to what it "typically" does. As Plaintiff argues, and Defendant does not directly address, the patent may be used on objects that are not computers, such as servers. Further, the Court is persuaded by the language of the specification, which defines the routine as a "generic term that refers to any sequence of operations." *See* '361 specification, at 3:10-12; '580 Patent at 3:7-19. Finally, the Court finds that limiting the definition of routine to "a sequence of instructions on a computer that is intended to start, perform a task, and then end once the task is complete" adds little to clarify the term "routine," and will not simplify the dispute for the jury. Thus, the Court construes this term as "a sequence of operations."

> B. "Detecting whether a routine has stalled," "determine if said first routine has stalled," "determine if said first method has stalled," "determining that said particular routine has stalled," "determining whether said particular method has stalled," "reporting said first routine as stalled," "reporting said particular routine as stalled," "determining whether said particular routine has stalled," "reporting said particular routine as being stalled" (Claims 1, 32, and 28 of the '361 Patent; Claims 1, 7, 6, 11, 15, and 20 of the '580 Patent)

The parties have agreed on the construction of the determining and reporting terms. *See* Dkts. 79-80. The Court adopts the joint construction, which defines the terms as follows:

- "Determine if the first routine has stalled" as "determine if said first routine is still incomplete after a predetermined timeframe" ('361 Patent, Claims 1, 32);

6

- "Determine if said first method has stalled" as "determine if said first method is still incomplete after a predetermined timeframe" ('361 Patent, Claim 28);

- "Determining that said particular routine has stalled" as "determining that said particular routine is still incomplete after a predetermined timeframe" ('580 Patent, Claim 1); and

- "Reporting said first routine as stalled" as "reporting said first routine as still incomplete after a predetermined timeframe" ('580 Patent, Claim 7).

Defendant further argues that these constructions should extend to the claims that are no longer being asserted against it by Plaintiff, because Defendant is requesting declaratory relief as to those claims. Dkt. 80 at 2. The Court agrees that the request for declaratory relief creates a true dispute,[1] and with no substantive objection from Plaintiff, construes those claims as:

- "Determining whether said particular method has stalled" as "determining whether said particular method is still incomplete after a predetermined timeframe" ('580 Patent, Claim 6);

- "Reporting said particular routine as stalled" as "reporting said particular routine as still incomplete after a predetermined timeframe" ('580 Patent, Claim 11);

- "Determining whether said particular routine is stalled" as "determining whether said particular routine is still incomplete after a predetermined timeframe" ('580 Patent, Claims 15, 20); and

---

[1] *See Apex Inc. v. Raritan Comp., Inc.*, 325 F.3d 1364, 1370 (Fed. Cir. 2003) (infringement requires construction to occur before infringement is determined); *see, e.g., Single Chip Sys. Corp. v. Intermec IP Corp.*, 04-CV-1517, 2006 WL 6145819, at *1-2 (S.D. Cal. Apr. 18, 2006) (Houston, J.) (issuing claim construction order in declaratory relief action).

7

- "Reporting said particular routine as being stalled" as "reporting said particular routine as being still incomplete after a predetermined timeframe" ('580 Patent, Claims 15, 20).

C. "Within an approximation of an expected time frame" ('580 claims 4, 6, 12, 18, and 23)

Because Plaintiff is no longer asserting the claims in which this term is used, the parties have agreed that construction is no longer necessary. *See* Dkts. 79-80. The Court agrees and does not construe this term.

D. "Executed upon any exit" (claims 13, 29, and 41 of the '935 Patent)

In *CA, Inc. v. New Relic*, Magistrate Judge Wall held that "executed upon any exit" should be given its plain and ordinary meaning. *See* 2014 WL 198823, at *4 (E.D.N.Y. January 15, 2014) (Wall, M.J.). Plaintiff argues that this Court should follow *New Relic* and find the same. Pl.'s Br. at 15.

Defendant initially disagreed and requested that "any" be construed as "all." Def.'s Resp. Br. at 2-3. Defendant argued that the independent claims in the '935 Patent require multiple exits, so logically, the patent's dependent claims must require something more. *See* Tr. at 68-70. Defendant also pointed out that CA previously conceded in *New Relic* that "claims 13 and 41 limit the term 'exit code' to include all exits." Def.'s Br. at 12. Without claim construction, Defendant argued, Plaintiff may later change its position and misconstrue the phrase to mean "one or more" exits. Def.'s Resp. Br. at 2-3 ("The very fact that CA has attempted to reserve its right to present this improper argument to the jury is exactly why this term should be construed now."); *New Relic*, 2014 WL 198823 at *4. Defendant emphasized that Plaintiff took this position in the *New Relic* case, and that "there is no dispute that AppDynamics does not have any product that covers 'all exits' with a section of code." Def.'s Resp. Br. at 2-3.

8

However, as of its September 19, 2014 letter, Defendant agreed that further construction of the term was no longer necessary. As a result, in accordance with the claim construction in *New Relic*, the claim will be given its plain and ordinary meaning.[2] *See Teleflex, Inc. v. Ficosa N. Am. Corp*, 299 F.3d 1313, 1325 (Fed. Cir. 2002) ("We indulge a 'heavy presumption' that a claim term carries its ordinary and customary meaning.") (internal citations omitted); *New Relic*, 2014 WL 198823, at *4.

E. The preamble ('935, '361, and '580 Patents)

The parties dispute whether the preamble to certain claims is limiting. *See* Pl. Br. at 7; Def.'s Br. at 24-25. The preamble at issue, which is found in all three Patents-in-Suit, states as follows:

> One or more processor readable storage devices having processor readable code embodied on said processor readable storage devices, said processor readable code for programming one or more processors to perform a method comprising: [. . .]

*See* '935 Patent, claim 35; '361 patent, claim 28; '580 patent, claims 7, 11, and 20.

A claim's preamble may limit the claim when the claim drafter uses the preamble to define the subject matter of the claim. *August Tech. Corp. v. Camtek, Ltd.*, 655 F.3d 1278, 1284

---

[2] The Court reserves the right to modify its claim construction in further proceedings. The Court also notes that in the former dispute between the parties, Defendant appeared to be worried that Plaintiff would take a position on this phrase that would be at odds with the "all exits" construction. However, Defendant did not present any evidence Plaintiff had actually taken that position in the immediate case. *Cf.* Pl.'s Resp. Br. at 3 ("CA does not take the position that 'any' means 'one or more' as opposed to 'all.'"). Defendant cited *O2 Micro* and *Cooper Notification, Inc. v. Twitter, Inc.*, 867 F. Supp. 2d 485, 491 (D. Del. 2012), but in those cases, the parties actively disputed the ordinary meaning of the terms, and the meaning of the claim term was not readily apparent. *See* Def.'s Resp. Br. at 3. Here, the essential dispute was not over interpretation of the term's ordinary meaning, but on whether the accused products infringed that ordinary meaning. *See id.* at 2-3 (arguing that dispute exists because Plaintiff has not dropped the claims from the case even though Defendant does not have any product that covers "all exits"). This is an issue that should be resolved at the infringement stage, not at claim construction. Thus, to seek alternate construction in the future, Defendant should present evidence that there is a true dispute over the *meaning* of the term, rather than over whether Defendant has a product that *infringes* within the bounds of that term.

9

(Fed. Cir. 2011) (citing *Allen Eng'g Corp. v. Bartell Indus.*, 299 F.3d 1336, 1346 (Fed. Cir. 2002)); *see Eaton Corp. v. Rockwell Int'l Corp.*, 323 F.3d 1332, 1339 (Fed. Cir. 2003) (preamble limits claims if it recites essential structure or steps). The preamble is limiting "when it is 'necessary to give life, meaning and vitality' to the claim based on the facts of the case at hand and in view of the claim as a whole." *August*, 655 F.3d at 1284 (internal citations omitted). Further, if limitations in the body of the claim rely upon and derive antecedent basis from the preamble, then the preamble may act as a necessary component of the claimed invention. *Eaton*, 323 F.3d at 1339. However, if the body of the claim sets out the "complete invention," then the preamble "may be superfluous." *Id.* (internal citations omitted).

Plaintiff's primary argument is that the preamble serves as a "convenient label for the invention as a whole," and that it "merely states the intended use or purpose of the claimed invention, namely that the claimed invention is performed by one or more processors executing processor readable code, as disclosed in the specification[.]" Pl.'s Br. at 7. That specification, which is cited in each of the three Patents-at-Issue, reads as follows:

> The present invention can be implemented using hardware, software, or a combination of both hardware and software. The software used for the present invention is stored on one or more processor readable storage media including hard disk drives, CDROMs, DVDs, optical disks, floppy disks, tape drives, RAM, ROM or other suitable storage devices. In alternative embodiments, some or all of the software can be replaced by dedicated hardware including custom integrated circuits, gate arrays, FPGAs, PLDs, special purpose computers and programmed general computers. Hardware that can be used for the present invention includes computers, handheld devices, telephones (e.g. cellular, Internet enabled, etc.), two-way pagers, etc. Some of these hardware devices include processors, memory, nonvolatile storage, input devices and output devices.

Pl.'s Br. at 7-8 (citing '935 patent, cols. 2:59-3:6; '361 patent, col. 2:34-43; '580 patent, col. 2:34-43). Plaintiff also argues that the preamble is not limiting because it is "obvious if [one is] a software person . . . that code works on processors and [one has] to store code in storage

devices[.]" Tr. at 38; *see* Pl.'s Resp. Br. at 14 (explaining that claim 28 of the '361 Patent "states that it is *object code* that is added to instrument the routine/method.").

Defendants counter by arguing that the preamble breathes "life and meaning into the claim" by specifying that the storage device at issue is a repository for processor readable code (*e.g.*, object code), rather than being a repository for non-executable code (*e.g.*, source code). Def.'s Resp. Br. at 15. Thus, the preamble would distinguish between copies of working software, which would fall under the preamble, and a software source code repository, which would not. *Id.* at 15. Without giving weight to this limiting preamble, Defendant argues, the claim would cover certain types of storage devices that the claims themselves suggest they do not cover. This is impermissible because the PTO requires software inventions to be categorized into patentable subject matters. Def.'s Resp. Br. at 16; Tr. at 130-31; *see* 35 U.S.C. § 101 ("Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title."). Without the preamble specifying on what device the software instructions are to be used, Defendant claims, the patent would be invalid. Def.'s Resp. Br. at 16.

The Court agrees with Defendant and finds that the preamble is limiting. Though Plaintiff argues that the limitations of the preamble are present in the claims themselves, the preamble distinguishes the patents as describing storage devices to executable codes, not human readable source codes. *See* Tr. at 130. Plaintiff has only been able to point to one claim in one patent (claim 28 of the '361 patent) that reflects the language of the preamble, which is

insufficient to limit all three patents.[3] Because the preamble breathes meaning into the patents-at-issue in this case, the Court finds that the preambles are limiting. *See Poly–Am., LP v. GSE Lining Tech., Inc.,* 383 F.3d 1303, 1310 (Fed. Cir. 2004) (preamble was limiting because it disclosed a "fundamental characteristic of the claimed invention").

## IV. Conclusion

The Court hereby construes the disputed terms as noted above. The parties shall proceed in this litigation in a manner consistent with this Opinion.

**SO ORDERED**

/s/ WFK

WILLIAM F. KUNTZ, II
United States District Judge

Dated: September 22, 2014
Brooklyn, New York

---

[3] The Court is also cognizant of the axiom that "claims amenable to more than one construction should, when possible, be construed to be valid," but does not find that argument dispositive here. *See Xerox Corp. v. 3Com Corp.,* 61 F. App'x 680, 683 (Fed. Cir. 2003).

12