UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CA, INC., d/b/a CA TECHNOLOGIES,　　　　　:

　　　　　　　Plaintiff,　　　　　　　　　　:

　　　　　　　　　　　　　　　　　　　　　　　: **DECISION AND ORDER**
　　　-against-　　　　　　　　　　　　　　:　13-cv-2111 (WFK) (SIL)

　　　　　　　　　　　　　　　　　　　　　　　:
APPDYNAMICS, INC.,　　　　　　　　　　　　:

　　　　　　　Defendant.　　　　　　　　　　:

　　　　　　　　　　　　　　　　　　　　　　　:
------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge**

Plaintiff CA, Inc. ("Plaintiff") brought this patent infringement action against AppDynamics, Inc. ("Defendant") on April 10, 2013 on the basis of two different types of patents held by the Plaintiff. Both types of patents at issue in this dispute relate to application performance management ("APM") technology, which monitors the performance of applications for irregularities and stalls. Presently before the Court are the parties' five separate *Daubert* motions. Plaintiff moves to exclude the testimony of Mr. Emmet J. Murtha and Dr. Charles Knutson. Defendant moves to exclude the testimony of Dr. Stephen L. Becker, Dr. Michael C. Brogioli, and Dr. Paul R. Dorsey. On the basis of the law and facts as set forth below, the Court DENIES Plaintiff's two *Daubert* motions, and DENIES Defendant's three *Daubert* motions. All five named experts will be permitted to testify at trial.

## PROCEDURAL AND FACTUAL HISTORY

The Court assumes familiarity with the facts of this action and with the three patents-in-suit, including U.S. Patent No. 7,225,361 and U.S. Patent No. 7,797,580 (collectively, the "Stall Patents"). *See generally CA, Inc. v. AppDynamics, Inc.*, 13-CV-2111, 2014 WL 2805115, at *1-2 (E.D.N.Y. June 20, 2014) (Kuntz, J.). Only a brief summary of the procedural history of the parties' *Daubert* motions will be recounted here.

On March 5, 2015, Plaintiff requested a *Daubert* hearing regarding (1) the opinions of Emmet J. Murtha on damages and Plaintiff's proposed royalty rates, and (2) the opinions of Dr. Charles Knutson on obviousness and value of the Stall Patents. Dkt. 136 ("Motion to Exclude

Knutson"); Dkt. 140 ("Motion to Exclude Murtha"). On March 6, 2015, Defendant requested a *Daubert* hearing regarding (1) the opinions of Dr. Stephen L. Becker on royalty rates and damages, (2) the opinions of Dr. Michael C. Brogioli on Defendant's .NET agent, and (3) the opinions of Dr. Paul R. Dorsey on the benefits of the Stall Patents. Dkt. 145 ("Defendant's *Daubert* Motions"). The Court held a *Daubert* hearing on April 7, 2015 at which the parties presented their arguments regarding the testimony of Mr. Murtha and Dr. Becker. For the other three motions, the parties rested on their papers.

The Court will address the Plaintiff's two *Daubert* motions first, before turning to the Defendant's three *Daubert* motions.

## LEGAL STANDARD

"The legal framework for admission of expert testimony is provided by the Federal Rules of Evidence [702 and 703], along with [*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993)] and its progeny." *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1313-14 (Fed Cir. 2014) (citations omitted). The Court's "gatekeeping obligation" applies "to all expert testimony." *Id.* at 1314 (citations omitted).

Federal Rule of Evidence 702, as amended in 2011, states that:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case.

The Supreme Court has stated that Rule 702 requires district courts to act as gatekeepers to assure that all expert testimony is both reliable and relevant. *Daubert*, 509 U.S. at 589. The proponent of the expert testimony bears the burden of establishing the admissibility of such

testimony under the *Daubert* framework by a preponderance of the evidence. *Id.* at 592 n. 10. *Daubert* lays out four general criteria for determining the validity of an expert's methodology: (1) whether the theory has been or can be tested or falsified; (2) whether the theory or technique has been subject to peer review and publication; (3) whether there are known or potential rates of error with regards to specific techniques; and (4) whether the theory or approach has general acceptance. *Id.* at 593–94. These guidelines are not to be construed as a "definitive checklist," 509 U.S. at 593, and the applicability of any one factor will depend "upon the particular circumstances of the particular case at issue." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999).

Further, as the Federal Circuit has explained, "[w]hen the methodology is sound, and the evidence relied upon sufficiently related to the case at hand, disputes about the degree of relevance or accuracy (above this minimum threshold) may go to the testimony's weight, but not its admissibility." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 852 (Fed Cir. 2010) (citations omitted). "That the gatekeeping role of the judge is limited to excluding testimony based on unreliable principles and methods is particularly essential in the context of patent damages . . . [Q]uestions regarding which facts are most relevant or reliable to calculating a reasonable royalty are for the jury." *Apple Inc.*, 757 F.3d at 1315 (internal quotation marks and citation omitted). Ultimately, "[a] judge must be cautious not to overstep its gatekeeping role and weigh facts, evaluate the correctness of conclusions, impose its own preferred methodology, or judge credibility, including the credibility of one expert over another. These tasks are solely reserved for the fact finder" at trial. *Id.* at 1314.

## THE PARTIES' ARGUMENTS

1. **Plaintiff's *Daubert* Arguments**

Plaintiff filed *Daubert* motions to exclude two of Defendant's experts: Mr. Emmet J. Murtha and Dr. Charles Knutson. The Court will address each in turn.

### a. Exclude the Testimony of Emmet J. Murtha

Plaintiff argues the testimony of Emmet J. Murtha on the value of the patents-in-suit should be excluded for two reasons: (1) his report is not tied to the facts of this case but instead is based on personal experience, irrelevant observations, and unrelated license agreements; and (2) his opinion should be excluded because its probative value is substantially outweighed by the danger of unfair prejudice and it would be cumulative. Dkt. 142-2 ("Memo on Murtha") at 7-16. For the reasons explained below, this Court denies Plaintiff's request to exclude the testimony of Emmet J. Murtha.

On the first issue, Plaintiff argues that (1) Mr. Murtha's analysis is based on his personal experience, rather than a methodology or analytic scheme, and (2) his reliance on vague industry norms and patents, which Mr. Murtha admits are unrelated to the case, is improper. Memo on Murtha at 9-13. Plaintiff also points out that Mr. Murtha's testimony was thrown out by the Federal Circuit when reviewing a different case because his opinion "f[ound] no support in the facts in the record." *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 81 (Fed. Cir. 2012).

In *LaserDynamics, Inc.*, 694 F.3d 51, the Federal Circuit found that (1) Mr. Murtha's lack of quantitative support for his economic computation would have justified excluding Mr. Murtha's opinions at the first trial and (2) the royalty rate propounded by Mr. Murtha at the second trial was "untethered from the patented technology at issue and the many licenses

4

thereto," such that a third trial was required. *Id.* at 69, 81. The Federal Circuit, however, also held that the district court "did not abuse its discretion in declining to exclude Mr. Murtha's [testimony] . . . on *Daubert* grounds." *Id.* at 79. The Federal Circuit instead suggested that "[f]ull consideration of all the *Georgia-Pacific* factors might well justify a departure [from the standard royalty rate, such as the one Mr. Murtha had proposed]," but Mr. Murtha had not performed such an analysis. *Id.* at 81.

In response, Defendant argues first that Mr. Murtha's real-world experience as a Certified Licensing Professional is highly relevant. Dkt. 142-5 ("Memo Opp. Murtha") at 5-8. For example, Defendant highlights the breadth of Mr. Murtha's experience, and argues it would be helpful for the jury to hear that a 30% royalty rate is essentially unheard of across a wide array of computer technology fields. *Id.* at 6.

Defendant next argues that Mr. Murtha's opinions are tied to the facts of this case. *Id.* at 9-14. For example, Defendant explains that Mr. Murtha identified a series of factors that would justify an unusually high royalty rate and then compared those factors to the facts of this case to determine that none of the factors were present here. *Id.* at 10-11. Further, Defendant notes that the licenses Mr. Murtha references are not used to derive a reasonable royalty rate but rather to "provide illustrative examples that support his opinion that [Plaintiff's expert's] 30 percent royalty rate is well outside the norm." *Id.* at 12 & n.7.

On the second issue, Plaintiff argues that the testimony of Mr. Murtha should be excluded because its probative value is greatly outweighed by the risk of unfair prejudice, and because it is redundant of Defendant's unchallenged expert's testimony. Memo on Murtha at 14-16. Defendant responds that Mr. Murtha's opinion is needed to provide context for the thirty percent royalty rate so the jury will be able to evaluate adequately the rate's reasonableness. Memo Opp.

Murtha at 8. Further, Defendant argues that the testimony is not duplicative because the other expert discusses a quantitative analysis while Mr. Murtha is testifying only to provide the jury with background and his real-world perspective. *Id.* at 8-9.

On balance, the Court finds Mr. Murtha's testimony should be admitted. Even if Mr. Murtha were offering similar testimony to that which he offered in *LaserDynamics, Inc.*, 694 F.3d 51, it would nonetheless not be an abuse of discretion for the Court to "declin[e] to exclude Mr. Murtha's [testimony] . . . on *Daubert* grounds." *Id.* at 79. Further, Plaintiff will be provided an opportunity to present a vigorous cross-examination, something that was lacking in *LaserDynamics, Inc. Id.* at 61 (noting defendant never objected to or sought to limit Mr. Murtha's testimony). Plaintiff has not shown that Mr. Murtha is engaging in junk science. A jury would be well-positioned to evaluate his testimony for its value and the information is likely to prove helpful to a jury in their determination of the appropriateness of the royalty rate proposed by Plaintiff's expert. *See Apple Inc.*, 757 F.3d at 1314-15. Thus, the Court DENIES Plaintiff's *Daubert* motion as to Mr. Murtha's testimony.

### b. Exclude the Testimony of Dr. Charles Knutson

Plaintiff argues that the testimony of Dr. Charles Knuston on the Stall Patents should be excluded for three reasons: (1) Dr. Knutson is not a person of ordinary skill in the art since he lacks particular experience with Java; (2) even if he is a person of ordinary skill in the art, some of his opinions are *ipse dixit* and conclusory; and (3) he does not have the relevant experience in APM software to testify regarding the value of the Stall Patents. Dkt. 139-2 ("Memo on Knutson") at 5-14. For the reasons set forth below, the Court disagrees with Plaintiff.

On the first issue of Dr. Knutson's qualifications, the parties' debate the issue of whether only an engineer can testify as an expert in Java byte code, or whether someone who reviews

Java byte code and is familiar with the program from an academic and commercial angle is sufficient. *Compare* Memo on Knutson at 6-9; Dkt. 143-8 ("Reply on Knutson") at 1-3 *with* Dkt. 139-5 ("Memo Opp. Knutson") at 5-8. Plaintiff proposes the former standard while Defendant champions the latter.

On the second issue of Dr. Knutson's opinions on obviousness, the law on obviousness requires a showing that a person of ordinary skill in the art would be motivated to combine the references and would have a reasonable expectation of success in doing so. *Wyers v. Master Lock Co.*, 616 F.3d 1231, 1238 (Fed. Cir. 2010). This determination can "include recourse to logic, judgment, and common sense." *Id.* at 1239 (citations omitted). Plaintiff argues Dr. Knutson's report does not explain the motivation for combining or the reasonable expectation of success of combining the identified prior art references. Memo on Knutson at 11-12. Defendant claims Dr. Knutson does explain the motivation to combine and, further, that his testimony is at least valuable as an expression of "logic, judgment, and common sense," which is all that is currently required on either the motivation issue or the issue of reasonable expectation of success. *See Wyers*, 616 F.3d at 1239, 1242043; *see also* Memo Opp. Knutson at 8-13.

On the third and final issue of Dr. Knutson's experience, Plaintiff argues Dr. Knutson is not qualified to testify about the value of the Stall Patents because he does not have specific experience in the field of APM software. Memo on Knutson at 14. Defendant responds that none of Dr. Knutson's opinions require the level of expertise insisted upon by Plaintiff. Memo Opp. Knutson at 13. Further, Defendant argues Dr. Knutson's opinion is needed to rebut the "fallacies" in Plaintiff's expert's testimony. *Id.* at 14.

Overall, there is no *Daubert*-relevant reason to exclude Dr. Knutson's expert testimony. He is well-educated, proficient in the general field, and not engaging in junk science. A jury

would be well-positioned to evaluate his testimony for its value, especially given what is likely to be a vigorous cross-examination, and the information is likely to prove helpful to a jury in their determination of the relationship of the patents-in-suit to the prior art as well as the value of the Stall Patents. *See Apple Inc.*, 757 F.3d at 1314-15. Thus, Plaintiff's *Daubert* motion to exclude the testimony of Dr. Knutson is DENIED.

## 2. Defendant's *Daubert* Arguments

Defendant filed *Daubert* motions to exclude three of Plaintiff's experts: Dr. Stephen L. Becker, Dr. Michael C. Brogioli, and Dr. Paul R. Dorsey. The Court will address each of the three motions in turn.

### a. Exclude the Testimony of Stephen L. Becker

Defendant argues the testimony of Dr. Stephen L. Becker on the value of the patents-in-suit should be excluded because (1) the inclusion of unpatented features in his calculation of value makes his opinion inadmissible; and (2) Dr. Becker uses Plaintiff's profit margins improperly to set the royalty rate. Dkt. 145-5 ("Motion on Becker") at 8-17. For the reasons discussed below, the Court denies Defendant's request to exclude the testimony of Stephen L. Becker.

On the first, unpatented features issue, "[t]he law requires patentees to apportion the royalty down to a reasonable estimate of the value of its claimed technology, or else establish that its patented technology drove demand for the entire product." *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1329 (Fed. Cir. 2014). If the expert chooses to apportion, then the components of the product must be separated and the value of the component or individual feature which the patent protects must be calculated alone. *Id.* (citing *LaserDynamics, Inc.*, 694

F.3d at 68). Further, "[w]here the smallest salable unit is, in fact, a multi-component product containing several non-infringing features with no relation to the patented feature . . . the patentee must do more to estimate what portion of the value of the product is attributable to the patented technology." *Id.* at 1327. The content of what constitutes "must do more" in a situation where the smallest saleable unit has non-infringing features that bear "no relation to the patented feature" has not been fully fleshed out yet. *Id.*

On the other hand, if the expert chooses to rely on an argument that the patented technology drove the demand for the infringing product, then "a patentee may assess damages based on the entire market value of the accused product *only where* the patented feature creates the basis for customer demand or substantially creates the value of the component parts." *Id.* at 1326 (brackets and citations omitted) (emphasis in original).

Defendant argues that Dr. Becker failed to successfully engage in either of the approved methods for determining royalty value. First, Defendant claims Dr. Becker failed to apportion value under the first method because he calculated the royalty base using the entire market value of the accused products, rather than just using the features which infringe the patents-in-suit. Motion on Becker at 9-10. Second, Defendant argues Dr. Becker failed to apply the alternative method of proof which would allow him to rely on the entire market value. Specifically, Defendant argues that Dr. Becker failed to establish that the technology covered by the patents-in-suit drove the demand for Defendant's accused products. *Id.* at 10-14.

Plaintiff responds that Dr. Becker limited the royalty base to the "smallest saleable infringing unit with close relation to the patented features," and therefore that Dr. Becker engaged in apportionment appropriately. Dkt. 145-18 ("Memo Opp. Becker") at 10-11, 12-16. Plaintiff argues that the "close relation" between the unpatented and patented features here is

9

sufficiently different from a situation where there is "no relation" that the "must do more" standard articulated by the Federal Circuit in late 2014 is inapplicable here. *See VirnetX, Inc.*, 767 F.3d at 1327. In the alternative, Plaintiff argues that Dr. Becker's analysis satisfies the entire market value rule ("EMVR") because "each of the patented technologies directly supports the effectiveness of the accused APM agents in their fundamental job of monitoring the performance of customer applications" and are critical to the commercial viability of the product as a whole. Memo Opp. Becker at 20-21.

On the second issue, the parties dispute whether Dr. Becker properly engaged in the *Georgia-Pacific* analysis. *See Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) (Tenney, J.) (listing fifteen factors "relevant, in general, to the determination of the amount of a reasonable royalty for a patent license."). Defendant argues that Dr. Becker improperly used Plaintiff's purported profitability as a basis for the royalty rate and that this use subsequently improperly inflates the resulting royalty rate. Motion on Becker at 14-17. Specifically, Defendant argues that Dr. Becker failed to account for other competitors in Plaintiff's and Defendant's industry in computing Plaintiff's patents' profitability. *Id.* at 15-16. Plaintiff responds that Dr. Becker appropriately considered numerous *Georgia-Pacific* factors in arriving at his royalty rate, and that it is within the jury's discretion to determine which factors are most relevant in the particular case. Memo Opp. Becker at 22-24; *see Apple Inc.*, 757 F.3d at 1315 ("This court has recognized that questions regarding which facts are most relevant or reliable to calculating a reasonable royalty are for the jury.") (internal quotation marks and citations omitted).

As the Federal Circuit has cautioned, the Court's role at the *Daubert* stage is limited to "excluding testimony based on unreliable principles and methods" and courts must be cautious

not to overstep. *Apple Inc.*, 757 F.3d at 1314-15. Here, Dr. Becker does not seem to be engaging in unreliable methods in using the *Georgia-Pacific* methodology, and the question of whether he correctly weighs the facts relevant to the royalty rate is best left to a jury. *Id.* Given what is sure to be vigorous cross-examination, the jury will be well positioned to evaluate the value of Dr. Becker's testimony for themselves. Therefore, the Court DENIES Defendant's *Daubert* motion to exclude the testimony of Dr. Becker.

### b. Exclude the Testimony of Dr. Michael C. Brogioli

Defendant argues that the testimony of Dr. Michael C. Brogioli on whether the .NET agent infringes the patents-in-suit should be excluded because Dr. Brogioli fails to show that every element of the asserted claims is present in the .NET agent. Dkt. 145-3 ("Motion on Brogioli") at 2-4. Specifically, Defendant argues that Dr. Brogioli does not perform an element-by-element analysis of the .NET agent, but only performs one for the Java agent and then simply says the .NET agent has generally similar code. *Id.* at 3-4.

Plaintiff responds that Dr. Brogioli has performed a sufficient analysis of the .NET agents to opine on their infringement of the patents-in-suit. Dkt. 145-16 ("Memo Opp. Brogioli") at 3-8. Plaintiff points out that Dr. Brogioli relied on testimony by Defendant's witness, on product testing, on Defendant's documents, and on source code as the bases of his opinions. *Id.* at 4-7. Plaintiff also stresses that Dr. Brogioli performs the element-by-element analysis for the Java agent and that the .NET agent was developed by translating the Java code into .NET code. *Id.* at 4-5.

The questions presented by this *Daubert* motion go to the sufficiency of Dr. Brogioli's analysis, rather than his methodology for performing that analysis in the first place. There is no questionable methodology, then, for the Court to exclude under the *Daubert* factors. Instead, the

11

sufficiency of the analysis based on the facts presented is a question best left for the jury, who will be better positioned to determine the value of Dr. Brogioli's testimony after his examination and cross-examination. *Apple Inc.*, 757 F.3d at 1314-15. Thus, the Court DENIES Defendant's *Daubert* motion to exclude the testimony of Dr. Brogioli.

### c. Exclude the Testimony of Dr. Paul R. Dorsey

Defendant argues that the testimony of Dr. Paul R. Dorsey on the benefits of the Stall Patents should be excluded because (1) Dr. Dorsey did not analyze whether the benefits are unique and (2) Dr. Dorsey's testimony is not tied to the facts of this case. Dkt. 145-3 ("Motion on Dorsey") at 2-4. Specifically, Defendant argues Dr. Dorsey's testimony should be excluded because he did not compare the Stall Patents to any prior art references or compare the approach promoted by the Stall Patents to any alternative approach. *Id.* at 2-3. Further, Defendant argues that this means Dr. Dorsey's testimony must be excluded as it risks confusion. *Id.* at 4.

On the first issue, Plaintiff argues that Dr. Dorsey sufficiently opined on the benefits of the Stall Patents, specifically on automatic instrumentation of object code and on the value of claim detection. Dkt. 145-19 ("Memo Opp. Dorsey") at 4-5. According to Plaintiff, Dr. Dorsey did not have to opine on uniqueness because he is not testifying to validity, a different expert is. *Id.* at 5 n.1.

On the second issue, Plaintiff states that Dr. Dorsey's opinion is directly linked to the facts of the case. *Id.* at 6-7. Plaintiff further argues that Dr. Dorsey's testimony on the general value of stall detection applications will be helpful to the jury and need not be tied to the specific patents-in-suit. *Id.* at 3-4.

Again, the question before the Court is one of fact, and specifically the sufficiency of the analysis of those facts, rather than one based on a challenge to unreliable principles or methods.

12

*See Apple Inc.*, 757 F.3d at 1314-15. As such, it is inappropriate for determination by the Court on a *Daubert* motion and is properly left for the jury to evaluate after the examination and cross-examination of Dr. Dorsey. Therefore, the Court DENIES Defendant's *Daubert* motion to exclude the testimony of Dr. Dorsey.

## CONCLUSION

After evaluating the arguments on the papers and as thoroughly presented by the parties at the *Daubert* hearing, the Court finds that none of the *Daubert* motions currently pending should be granted. All of the experts disclosed are highly educated and seem to be proficient in their fields. Further, this case is highly technical and will likely be fought at the expert level, with vigorous examination and cross-examination on the part of both parties. A jury would be well-positioned to evaluate these experts' testimony and the facts on which the experts rely for their respective values, and the information is likely to prove helpful to a jury in their determination of the relationship of the patents-in-suit to the prior art as well as the value of the patents-in-suit. *See Apple Inc.*, 757 F.3d at 1314-15. Therefore, the Court DENIES both of the Plaintiff's *Daubert* motions and all three of the Defendant's *Daubert* motions.

As previously ordered, jury selection for trial in this action will commence at 9:30 A.M. on Monday, August 17, 2015. Trial is scheduled to conclude on or before Friday, August 28, 2015.

SO ORDERED
s/William F. Kuntz, II

WILLIAM F. KUNTZ, II
United States District Judge

Dated: April 8, 2015
Brooklyn, New York